36314.   UNITED STATES FIDELITY & GUARANTY
CO. *et al.* v. HOLLAND.

DECIDED JANUARY 25, 1957.

*Swift, Pease, Davidson & Chapman,* for plaintiffs in error.
*Paul Blanchard,* contra.

FELTON, C. J.   The State Board of Workmen's Compensation awarded compensation to the widow of John Holland for his death allegedly caused by an accident arising out of and in the course of his employment.   The award was affirmed by the superior court, and the Nehi Corporation, the employer, and its insurance carrier excepted.   The employer admitted that John Holland received an injury on April 17, 1955, by falling down stairs on the premises where he was a watchman.   He was carried immediately to a hospital where he was under the care of Dr. George R. Connor who testified in substance: That he examined and X-rayed Mr. Holland and made a diagnosis of contusion of his spine, sprain of his back, contusion of his pelvis and left indirect inguinal hernia; that he was placed on bed rest, given supportive treatment and X-rayed again on several occasions and that on April 26th his hernia became strangulated requiring an operation; that Mr. Holland made a normal post-

operative recovery and was discharged from the hospital one week later, on May 2nd; that he was then carried as an outpatient and was in the witness's office on May 4th when he was still complaining of pain in his left groin, the operative side, some stiffness and some pain in the lower region of his back; that the witness next saw Mr. Holland on May 6th at his home, when he found him totally unconscious, unable to move any of his extremities except his left arm and left leg; that he was hospitalized that day and died on May 28th, in his opinion, of a cerebral hemorrhage; that on April 17th, when he examined him, he did not find any injury to his head; that he had no symptoms and received no medication for pain or injury to his head; that no X-ray was made of the head or skull and there was no other test made to determine whether there was a fracture; that the deceased told him he had not had a hernia and the operation did not disclose whether it was a sudden or chronic hernia; that the deceased said it had just come on; that the witness did not think the operation caused by the strangulation of the hernia had any effect on or caused in any way the cerebral hemorrhage; that the presence of the hernia could not have been the cause of the cerebral hemorrhage; that the hernia plus the operation could possibly have been a contributing cause; that such was possible; that he did not draw off any spinal fluid to determine if there was a hemorrhage due to trauma; that hemorrhages might result from a very slight trauma in which the patient suffers no ill effect for several weeks and does not lose consciousness and does not have hemiplegia or become paralyzed; that he would say definitely that the deceased did not have any sign of subdural hematoma; that he did not complain of headache; that the deceased had arteriosclerosis; that when a man gets 75 years old the arteries can rupture due to pressure from within; that vascular accidents are usually not due to trauma in cases of arteriosclerosis; that when Mr. Holland was first taken to the hospital his blood pressure was in the neighborhood of 200, which indicated high blood pressure; that the high blood pressure was not caused by the fall.

There was also evidence that the deceased had complained to several persons about having a headache. One complaint was

made immediately after the fall, the deceased complaining that he had a headache which was the first headache he had ever had. The deceased further complained of having a headache at the hospital and complained of a headache to.an intern who attended him immediately upon his arrival at the hospital.

The award of compensation was based on the findings that the deceased complained of headaches to various people before he was first carried to the hospital and on the theory that the deceased died during disability and that there was a presumption that the accident contributed to the death.

Dr. Connor testified that the hernia and the operation to repair the hernia combined could possibly have been a contributing cause of the cerebral hemorrhage. Dr. Connor further testified that he did not check the deceased for a possible cerebral hemorrhage due to trauma because the deceased did not complain to him of headaches or of any other symptom of cerebral hemorrhage. The doctor in effect also testified that if the deceased had fallen down a flight of concrete steps and later became paralyzed, and if the deceased had complained to anyone of headaches, such would be a symptom of subdural hematoma.

We think that the evidence authorized the board to make one of two reasonable inferences, or both: one, that the hernia and the corrective operation combined to contribute to the incident of the cerebral hemorrhage; and two, that because the deceased had complained of headaches immediately after his fall and for some time thereafter, such headaches were symptoms of subdural hematoma resulting from trauma produced by the fall.

Any opinion Dr. Connor may have expressed disassociating the cerebral hemorrhage from the fall was based on the fact that the deceased had not complained *to him* of headaches. But Dr. Connor testified that if the deceased had complained of headaches even to someone else, his opinion and possible diagnosis would have been different.

Since the evidence authorized the finding that the decedent's death was caused or contributed to by an accident in the course of and arising out of his employment, the court did not err in affirming the award granting compensation.

*Judgment affirmed. Quillian and Nichols, JJ., concur.*